## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHANTE M. MOORE,                         *
                                         *
            Plaintiff,                   *
                                         *
      v.                                 *      Civil Action No.: 05-2020 (PLF/DMR)
                                         *
DISTRICT OF COLUMBIA, et. al.,           *
                                         *
            Defendants.                  *

## PLAINTIFF'S OPPOSITION TO THE DEFENDANTS DISTRICT OF COLUMBIA AND OFFICER ELDORADO MILLS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Plaintiff Shante M. Moore, by and through her counsel, counsel Donna Williams Rucker, Esquire, and the law firm of DuBoff & Associates, Chartered, and pursuant to Fed. R. Civ. P. 56, in opposition to Defendant District of Columbia and Officer Eldorado Mills' Motion for Summary Judgment, and in support therefore, states as follows:

1.      There exists evidence from which a reasonable juror could conclude that the District of Columbia and Eldorado Mills, due to their negligent acts and/or omissions, caused plaintiff to endure a false arrest, false imprisonment, assault, battery, excessive force, and emotional distress.

2.      There was no probable cause to place Plaintiff in handcuffs.

3.      There was no probable cause to arrest and/or imprison the Plaintiff.

4.      The force used against Plaintiff was excessive force.

5.      Plaintiff did not flee from the Police, and only learned of this allegation when she was being processed at the police station.

6.      Plaintiff did not refuse to produce a driver's license and was assaulted and battered by Defendant Mills.

7.      Defendant Mills is not entitled to immunity as to any claim.

8.      There exists a genuine dispute of facts material to this case and therefore the Defendants are not entitled to summary judgment.

9.      Plaintiff's position in opposition is more fully set forth in the accompanying Memorandum of Points and Authorities, Plaintiff's Statement of Material Facts in Dispute are attached hereto and incorporated herein by reference thereto.  A Proposed Order is also provided.

**WHEREFORE**, plaintiff respectfully requests that Defendant District of Columbia and Officer Eldorado Mills' Motion for Summary Judgment be denied and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,


By:      /s/ *Donna Williams Rucker*
Donna Williams Rucker, 446713
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile


## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing Plaintiff's Opposition to Defendant District of Columbia and Officer Eldorado Mills' Motion for Summary Judgment, with accompanying Memorandum of Points and Authorities and a copy of the proposed Order were electronically filed via this Court's Electronic Case Filing System this 29th day of August, 2007, to George Rickman, Esquire, Assistant Attorney General, 441 4th Street, N.W., Washington, D.C.

  /s/ *Donna Williams Rucker*
Donna Williams Rucker, 446713

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SHANTE M. MOORE,**                     *
                                         *
       **Plaintiff,**          *
                                         *
  **v.**                                  *     **Civil Action No.: 05-2020 (PLF/DMR)**
                                         *
**DISTRICT OF COLUMBIA, et. al.,**       *
                                         *
      **Defendants.**              *

## EXHIBIT LIST

1.    Deposition of Plaintiff Shante Moore

2.    Deposition of Richard Mattiello – District of Columbia's Rule 30(b)(6) designee

3.    Deposition of Johnny Andrew Moore

4.    Deposition of Sergeant James J. McCourt

5.    Deposition of Defendant Eldorado Mills Volume II

6.    Plaintiff's Interrogatory Answers

7.    Robert Klotz - Expert Report

8.    Event Chronology for Event number I20040603206

9.    Event Chronology for Event number I20040603211

10.   Exhibit 10 – Citizen Complaint Form – OCCR Control Number 03-0561

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHANTE M. MOORE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: 05-2020 (PLF/DMR)** |
| | * | |
| **DISTRICT OF COLUMBIA, et. al.,** | * | |
| | * | |
| **Defendants.** | * | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
HER OPPOSITION TO THE DEFENDANTS DISTRICT OF COLUMBIA AND
OFFICER ELDORADO MILLS' MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, Plaintiff Shante M. Moore, by and through Donna Williams Rucker, Esquire, and the law firm of DUBOFF & ASSOCIATES, CHARTERED, and pursuant to Fed. R. Civ. P. 56 submits the following Memorandum of Points and Authorities in Support of Her Opposition to Defendant District of Columbia and Officer Eldorado Mills' Motion for Summary Judgment, as follows:

**I.    FACTS**

On, or about, October 12th, 2004, at approximately 2:15 a.m., the Plaintiff was operating her motor vehicle northbound on 46th Street S.E., at, or near, its intersection with Hillside Road S.E.  (Exhibit 1 – Plaintiff's Deposition Pg 49:7-16).  After Plaintiff stopped at the stop sign and completed her turn onto Hillside Drive she passed the marked patrol car as she proceeded westbound on Hillside Drive S.E.  As she passed the marked car, the operator of the vehicle, later identified as Defendant Mills, made a gesture towards the Plaintiff which involved licking his tongue and fingers in a highly sexual manner. (Exhibit 1 Pg 52:19-56:2).

Plaintiff made a face clearly showing her disgust and continued approximately two blocks to her home at 1108 48th Place S.E.    (Exhibit 1 Pg 56:3-5).  Plaintiff drove her car onto

the driveway of her home and got out of the car, as she did so she observed a marked

Metropolitan Police vehicle pull behind her, turn on its emergency lights and block the driveway.

(Exhibit 1 Pg 56:6-9; 18-21 and Pg 57:9-58:20).  The Plaintiff had not observed the police

cruiser behind her before this point.  (Exhibit 1 Pg 56:6-9)

Defendant Mills, acting in the course of and within the scope of his duties as a police

officer of the Metropolitan Police Department, (Exhibit 2 Deposition of Richard Mattiello Pg

98:12-16), got out of the police car and shouted "Bitch you wanna go to jail tonight!" and began

to walk towards Plaintiff. (Exhibit 1 Pg 62:14-16).  Plaintiff, scarred, stopped and was looking at

Defendant Mills. (Exhibit 1 Pg 101:19-102:6).  Plaintiff, who was within steps of her home, and

was scared, said she wanted to get her father who was in the house.  Defendant Mills then

physically grabbed Plaintiff and shoved her away from the door while yelling, "I'll get your

father!" (Exhibit 1 Pg 62:19-22 and Pg 65:15-21).  Then Defendant Mills began to beat on the

door with his fist. (Exhibit 1 62:19-22).

Members of the Plaintiff's family, including her mother and father, had come to the door,

but remained behind the screen door. (Exhibit 3 Deposition of Johnny Andrew Moore Pg 39:7).

Plaintiff's family was not violent or yelling at Defendant Mills. (Exhibit 4 Deposition of Officer

James J. McCourt Pg 22:10-13).

Plaintiff, who feared for her safety, and the safety of her family, asked Defendant Mills to

call another officer because she didn't understand why he was treating her and her family as he

was.  (Exhibit 1 Pg 70:20-71:3 and Exhibit 5 Deposition of Defendant Mills Volume II Pg 72:13-

17).  Plaintiff's family had also called the police and stated the police were harassing Plaintiff.

(Exhibit 5 Pg 59:10-13 and Exhibit 2 Pg 145:2-4).  Defendant Mills called for a Sergeant to

come to the scene. (Exhibit 5 Pg 72:18-21).

Defendant Mills was standing in front of the door of the home and was facing the house with Plaintiff to his left. (Exhibit 5 Pg 51:10-14). Several other officers, including Sergeant McCourt responded to the scene. (Exhibit 4 Pg 16:15-18 and Exhibit 5 Pg 47:11-15). Sgt. McCourt was responsible for what went on one he arrived at the scene. (Exhibit 2 Pg 109:18-21). Sgt. McCourt had the ability to say that Defendant Mills' action were improper but he did not do so. (Exhibit 5 Pg 65:12-15). Sgt. McCourt, Defendant Mills' supervisor, does not recall speaking with Plaintiff at the scene to ascertain what was going on or why her family had called to police, as was required by District of Columbia and/or policies and procedures of the Metropolitan Police Department. (Exhibit 4 Pg 49:5-11 and Exhibit 2 Pg 146;20-147:7).

Officer Mills never asked Plaintiff for her license. (Exhibit 3 Pg 31:18-22). The other officers who arrived on the scene told Plaintiff that she should have given her license and Plaintiff responded that she had never been asked for it before and that it was in her purse. (Exhibit 3 Pg 32:1-4). Plaintiff then reached into her purse and attempted to hand the license to the inquiring officer. (Exhibit 1 Pg 79:12-16). As Plaintiff extended her arm with the driver's license in her hand, Defendant Mills grabbed Plaintiff's arm, shoved it up behind her back and slammed her into the metal railing and bent her over the railing on her porch, causing her to suffer pain and injury to her arm and placed her in handcuffs. (Exhibit 5 Pg 72:9-12 and Exhibit 1 Pg 79:12-80:3 and Exhibit 3 Pg 33:2-21 and Pg 34:13-15). Other officers grabbed the Plaintiff after Defendant Mills had slammed Plaintiff into the railing. (Exhibit 1 Pg 79:12-80:3 and Exhibit 3 Pg 33:2-21 and Pg 34:13-15).

Defendant Mills then placed Plaintiff in the back of his police car, where she remained for quite awhile. (Exhibit 1 Pg 81:15-17). Defendant Mills returned to the car and drove Plaintiff away from her house, ostensibly taking her to the police station. (Exhibit 1 Pg 82:17-

20).  However, Defendant Mills did not drive directly to the police station. (Exhibit 1 Pg 83:20-22).  As he was driving, Defendant Mills pulled over on Hillside and made a cell phone call telling an unknown person,  "I'm going to teach this bitch a lesson!"  (Exhibit 1 Pg 83:6-8).  Plaintiff started to cry again and Defendant Mills said to Plaintiff "You're not so though now".  (Exhibit 1 Pg 83:9-10).  Defendant Mills drove Plaintiff around with his windows down, and the weather was very cold. (Exhibit 1 83:13-14).  Defendant Mills was driving erratically and speeding causing the Plaintiff, whose hands were cuffed behind her back, to slide back and forth along the back seat. (Exhibit 1 Pg 83:15-16).  Plaintiff was not able to identify what streets they were driving on because Defendant Mills was driving at a high rate of speed.  (Exhibit 1 Pg 83:20-22).  Plaintiff was aware however, that Defendant Mills was not taking her directly to the police station. (Exhibit 1 Pg 83:20-22).

Defendant Mills then drove the police car to what appeared to be a secluded wooded area. (Exhibit 1 Pg 83-17-19).  The Plaintiff was now terrified. (Exhibit 6 Plaintiff's Answers to Interrogatory questions 17 & 18).  Plaintiff knew she was not at the police station, and was extremely afraid of Defendant Mills and feared what he might do to her.  (Exhibit 6, 17 & 18).  Plaintiff was still crying and was thoroughly intimidated and terrified by Defendant Mills actions and she was in fear for her life.  (Exhibit 6, 17 & 18).  Defendant Mills kept the Plaintiff in the isolated wooded area intentionally intimidating Plaintiff, and inflicting emotional distress upon the Plaintiff.

Plaintiff's brother Johnny Andrew Moore drove to the station to meet Plaintiff and Defendant Mills.  Mr. Moore left the house after the Plaintiff and Defendant Mills and when he arrived at the Sixth District Station and he was informed that his sister, the Plaintiff, had not yet arrived at the station. (Exhibit 3 Pg. 46:8-14).

Defendant Mills eventually arrived at the police station. At the station, Plaintiff was processed and was shocked to learn that she was being charged with fleeing from the police. (Exhibit 1 Pg 105:5-9). Plaintiff said Defendant Mills had never said anything about her attempting to flee from him and that she had only been told that he claimed she had not stopped at a stop sign blocks from her home. (Exhibit 1 Pg 104:4-10 and Pg 63:9-11).

Plaintiff was booked, processed and placed in a jail cell where she was forced to spend the night. (Exhibit 1 Pg 95:11-14). The next morning, Plaintiff was transported to the D.C. Superior Court with the other prisoners. (Exhibit 1 Pg 96:10-97:3). Plaintiff formerly worked at the D.C. Superior Court and was thoroughly embarrassed and humiliated when courthouse staff with whom she had previously worked recognized her. (Exhibit 1 Pg 10:2-14 and Pg 98:17-99:3 and Pg 99:19-100:5). There were several court appearances scheduled that she attended; Defendant Mills never appeared at any scheduled hearing and the case against Plaintiff was dismissed. (Exhibit 2 Pg 134:2-4).

In the instant case the Plaintiff filed her Complaint in this Honorable Court alleging violations of her Constitutional Rights under the 4th, 5th and 14th Amendments, False Arrest and Imprisonment, Assault and Battery, Intentional Infliction of Emotional Distress and Negligent Supervision. (See Complaint Generally – Docket number 1).

## II.    <u>STANDARD OF REVIEW</u> - **Summary Judgment**

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d. 202, 106 S. Ct. 2505 (1986). In deciding a motion for summary judgment the district court is obligated to view the available evidence in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d

142, 90 S. Ct. 1598 (1970); *Popham, Haik, Schnobrich, Kaufman & Dotty, Ltd. V. Newcomb Securities Co.*, 243 U.S. App. D.C.  43, 751 F.2d 1262, 1263 (D.C. Cir. 1985) ("any doubt is to be resolved against the moving party").  In *Anderson*, the Supreme Court made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

The moving party bears the burden of demonstrating the absence of any genuine issue of material facts.  *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Richardson v National Rifle Association,* 871 F. Supp. 499 (D.D.C. 1994).  The defendant is thus entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Id.*

The Court's threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury <u>might</u>  (emphasis added) return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires trial." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added).

"The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail."  *Mills,* 1998 D.C.App. LEXIS 9, at *9; *McBryde v. Amoco Oil Co.,* 4040 A.2d 200, 203 (D.C. 1979).   In addition, all ambiguities must be resolved in plaintiff's favor.  *See Bible Way Church of Our Lord Jesus*

6

*Christ of the Apostolic Faith v. Beards,* 680 A.2d 419, 430 (D.C. 1996). Given these considerations, "unless it is beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," a pleading should not be dismissed. *Id*.

Under a Rule 56 analysis, defendant's motion must fail as plaintiff has adequately stated claims upon which relief can be granted.

### III.    ARGUMENT

#### A.    The Claim Under 42 U.S.C., Section 1983 Against the District of Columbia Can Be Maintained Based on the Acts of This Case.

*Monell v. New York Department of Social Services*, 436 U.S. 658, 691 (1978) states that a "municipality cannot be held liable under 42 U.S.C. § 1983 on the theory of *Respondeat superior."*, however the District of Columbia can be held liable under §1983 based upon *Monell* nonetheless. In *Haynesworth v. Miller*, 820 F.2d 1245 (1987), the court acknowledges that *Monell* "firmly established that a municipality can be held liable in damages for constitutional violations". It also held that liability attaches under §1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury…". This establishes the basic test as to when a municipality can be held accountable for the actions of its employees, agents, or representatives.

In the instant case, Defendants violated Plaintiff's Constitutional rights. The violation occurred when Plaintiff was grabbed and forced into a railing by at least 3 uniformed male officers of the District of Columbia, forcibly handcuffed and when Officer Mills intentionally inflicted emotional distress upon the Plaintiff.

Officer Mills placed Plaintiff in handcuffs, which were too tight, placed her in his patrol vehicle, left her to sit for awhile and the proceeded to take a circuitous route to the station, all the while subjecting Plaintiff to verbal threats, and conducting cell phone calls wherein Officer Mills stated that "I'm going to teach this bitch a lesson".  Officer Mills stopped his patrol vehicle at least two times while allegedly driving Plaintiff to the station, telling her "you're not so tough now".  Defendant drove with the windows down in the middle of October and at a high rate of speed throwing the Plaintiff around the interior of the police vehicle, with no way of bracing herself as her hands were handcuffed behind her body.  Plaintiff was ultimately taken to the police station, booked and placed into a cell overnight.

It is the custom of police officers in the District to stop and/or detain citizens as permitted by law.  Clearly, the acts of Defendant Mills indicated that on the morning in question he represented official policy and custom of the District of Columbia and the District of Columbia relied on Defendant Mills' perception routinely regarding actions taken against Plaintiff like the actions of stopping, detaining, grabbing Plaintiff and handcuffing Plaintiff were asserted on behalf of his official authority as a police officer for the District of Columbia.  It is by his authority as a District of Columbia Police Officer that Defendant Mills could detain the Plaintiff by grabbing her arm and wrenching it behind her back and with the help of at least two other officers, knocking her into and then bending her over a metal railing at her home, handcuffing the Plaintiff and removing her from the location.

It is apparent in this case that the acts of Defendant Mills may fairly be said to represent official policy and it is these actions that resulted in a violation of her Constitutional rights and physical and emotional injury to Plaintiff.  (See Plaintiff's Complaint, *generally*).  Based upon *Monell v. New York Department of Social Services*, 436 U.S. 658, 691 (1978), Plaintiff has

properly established that the District of Columbia is a proper Defendant in this action, irrespective of any claim of *Respondeat Superior*.

Although *Monell* gives Plaintiff a cause of action against the District of Columbia based upon Officer Mills' acts, which fairly represented official policy and/or custom, the District also has direct liability as a municipality. "The primary justification for this type of liability is the recognition that a municipality can act only through those who enable it to function. When an officer or employee has been delegated power or responsibility to act *for* the municipality in a given area, he may be acting *as* a unit of the municipal government, thus rendering the municipal entity liable for his constitutional wrongdoings. The critical issue, then, is whether the Municipal representative, when engaging in the activity challenged, can properly be said to have acted as the alter ego of the Municipality. This inquiry poses a question of fact rather than law and in order to survive a motion to dismiss, the complainant must set forth a "plausible nexus" between the action assailed and the authority conferred by the Municipality." *Haynesworth v. Miller*, 820 F.2d 1245 (1987).

In the instant case, Plaintiff's Constitutional rights were violated as a direct result of the authority conferred on Defendant Mills. Without the authority conferred by the District of Columbia, Defendant Mills would not have had the authority to stop, detain, handcuff, and forcibly move Plaintiff from the location. Defendant Mills was employed as a police officer and was on duty on the date of the alleged occurrence. The District of Columbia established the Metropolitan Police Department in §4-101 of the District of Columbia Code. §4-104 of the Code states in part, "The Mayor of said District shall appoint to office, assign to such duty or duties as he may prescribe…". D.C. Code §4-104 and §4-107, which sets forward the composition of the force and the duties of the positions, clearly shows that Defendant Mills had been "delegated

power or responsibility to act *for* the municipality in a given area." This satisfies the first prong of the test as expressed in *Haynesworth*.

The second prong of the *Haynesworth* test requires that "the municipal representative, when engaging in the activity challenged, can properly be said to have acted as the alter ego of the municipality. This inquiry poses a question of fact rather than the law." Defendant Mills was acting as the "alter ego" of the municipality on the morning of this incident. He was wearing a uniform issued by the city, carrying weapons provided by the city, driving a police car provided by the city, and performing the duties established in the D.C. Code. Defendant Mills was acting within the course and scope of his employment when he stopped, forcibly grabbed the Plaintiff and with the help of at least two other officers placed her in handcuffs and placed the Plaintiff in Defendant Mills' patrol vehicle without reasonable suspicion or probable cause and against the Plaintiff's will.

Lieutenant Richard Mattiello was the Defendants 30 (b)(6) witness who was designated, by the District of Columbia to testify about the District's polices and procedures governing the performance of their duties and the law that the District of Columbia officers are governed by. Defendant District of Columbia, by and through Lt. Mattiello, have admitted that if a complaint is made to a Sergeant that the Sergeant is required to provide the complaining party with a PD 99 form and give them information regarding filing a complaint with the Office of Police Complaint. (Exhibit 2 Pg 15:18-16:1 and 16:19-17:1). Mrs. Moore made a call to the Police on the morning of the incident and stated that Officers were harassing the Plaintiff and that she needed someone to come and help. The Event Chronology states that a supervisor was sent to the scene (Exhibit 8 – Event Chronology for Event Number I20040603206). The supervisor/Sergeant who was originally dispatched to the scene was Sergeant Charles Foster,

however Sergeant McCourt informed the dispatcher that he was already on the scene. (Exhibit 2 Pg 149:6-20 and Exhibit 4 Pg 19:1-17).  Sergeant McCourt as a District of Columbia Police Sergeant was responsible for what goes on at a scene once he arrives. (Exhibit 2 Pg 109:18-21). Sergeant McCourt does not even remember speaking with the Plaintiff at the scene to ascertain if the arrest had been handled properly according to the policies and procedures of the Metropolitan Police Department, even knowing that Mrs. Moore had called for help stating that officers were harassing the Plaintiff.

Moreover at least one citizen complaint was made to the Citizen Complaint Review office against Defendant Mills for his use of excessive force and profanity.  Specifically Mr. Craig Ivan Green filed OPC complaint No. 03-0561 against Defendant Mills regarding an incident on August 24, 2003 involving Defendant Mills' use of excessive force and profanity. Given this citizen complaint, the Defendant District of Columbia was aware of Defendant Mills' propensity for profanity and excessive force.  (Exhibit 10 – Citizen Complaint Form – OCCR Control Number 03-0561).

Plaintiff's expert Mr. Robert Klotz has opined that Defendant Mills, utilized inappropriate and unnecessary force in taking her into custody and that Defendant Mills acted unreasonably and inappropriately by taking Plaintiff to a secluded area rather than directly to the police facility for processing and violated national and local police standards. (Exhibit 7 – Report of Robert Klotz, Plaintiff's Expert).

Plaintiff has demonstrated the liability of the District of Columbia as established by *Monell v. New York Department of Social Services*, 436 U.S. 658, 691 (1978), and according to the principals discussed in *Haynesworth v. Miller*, 820 F.2d 1245 (1987).  Mills, a Metropolitan Police Officer named in the Complaint had been delegated authority to act in the area of

peacekeeping and law enforcement during the entire time of the incident in question.  Defendant

Mills was acting as the alter ego of the municipality, and he was authorized to make decisions on

the street as to how he would handle an individual event, it was not the custom and he was not

expected to call the Mayor or the Chief of Police to obtain guidance from them, rather he had the

authority that had been delegated by the District of Columbia.  The actions by Defendant Mills

were consistent with the established customs and practices of the District of Columbia

Metropolitan Police Department.  Officer Mills, and Sergeant McCourt were acting under the

color of law granted to them under the D.C. Code §4-101, §4-105 and §4-107, and by virtue of

their position as police officers for the District of Columbia.

Consequently the District is a proper Defendant under *Monell* and is not entitled to

summary judgment.

      B.     <u>Defendant Mills is not entitled to immunity because no reasonable officer would</u>
<u>have believed that Plaintiff could be arrested or that the force used was reasonable</u>

Shante Moore was arrested by Defendant Mills without Probable Cause and in violation

of the 4th Amendment to the United States Constitution.  Officer Mills is not entitled to qualified

immunity because his actions were not objectively reasonable and he violated Plaintiff's clearly

established constitutional rights. (Exhibit 7).  No reasonable officer would have believed that

Plaintiff could have been arrested or that the force used by Defendant Mills was reasonable.

Defendants state at least twice in their argument that "uncontroverted evidence" supports

probable cause for effecting the arrest of the Plaintiff.  Plaintiff would strenuously object to such

a characterization and would state that the Defendants are being disingenuous in the use of the

term "uncontroverted" in that it is entirely evident that the evidence in question is most definitely

challenged by the Plaintiff.

Although *Saucier v. Katz*, 533 U.S. 194, 200 (2001) and *Lenderman v. United States*, 291 F.3d 36 (D.C. Cir. 2002), state that under certain circumstances government officials enjoy qualified immunity from constitutional and statutory claims against them, in this case immunity is not warranted. Here, Plaintiff has evidence, which will show that Officer Mills violated her constitutional rights when he falsely arrested her, falsely imprisoned her, subjected her to the use of excessive force, assaulted and battered the Plaintiff and inflicted emotional distress upon the Plaintiff. Plaintiff's evidence will satisfy the two-fold inquiry required in *Brosseau v. Haugen*, 543 U.S. 194 (2004), when determining if a government officer is entitled to qualified immunity.

If Plaintiff's allegations in her complaint are deemed true, as the standard for Summary Judgment requires, Officer Mills' conduct violated a constitutional or statutory right. Second, the rights Plaintiff alleges were violated had been clearly defined and established at the time of Defendant Mills' actions. A reasonable official would have understood that what Officer Mills did was wrong. Therefore, based on *United States v. Lanier*, 520 U.S. 259, 270 (1997), liability attaches to Officer Mills.

Liability attaches to Officer Mills and he is not entitled to qualified immunity even when you examine whether Plaintiff's rights were clearly established, not in a broad sense but in light of the specific context of this case. A reasonable officer in Officer Mills position would have known that what Officer Mills forced the Plaintiff to endure, violated her constitutional rights and other statutory law.

Officer Mills arrested Shante Moore without Probable Cause in the presence of and with the tacit approval of his supervisor Sergeant McCourt, in violation of the 4th Amendment to the United States Constitution. Defendants allege in this case that Ms. Moore fled from the police after failing to stop for a stop sign and failing to provide a driver's license.

When taking the evidence in the light most favorable to the Plaintiff, as required in this stage of litigation, there is no evidence that Plaintiff attempted to resist Officer Mills' alleged attempt to stop her for allegedly failing to stop for a stop sign as she has testified in her deposition that she did not see Defendant Mills' vehicle with its lights on until after she stopped in her driveway.  Plaintiff made no furtive gestures or ignored police commands, in fact when Plaintiff was attempting to comply with an officers request to show her license she was forcibly grabbed, had her arm wrenched behind her back, forced into and bent over a metal railing on her porch and handcuffed by Defendant Mills who was assisted by at least two other officers of the District of Columbia.  All parties have admitted that Plaintiff did not assault Officer Mills, in fact Sergeant McCourt even states that he saw Plaintiff with tears.

Officer Mills' claims that he called for backup because he feared for his safety are not credible since he himself admits that it was the Plaintiff who asked him to call for backup. (Exhibit 5 Pg 72:13-21).  Plaintiff's mother was able to call the police and complain that a police officer was harassing Plaintiff before Officer Mills made the radio call for assistance.  (Exhibit 8 and Exhibit 9).

Besides the allegation that Plaintiff was attempting to elude the police even Officer Mills cannot offer anything else that allegedly caused him to fear for his safety.  The District of Columbia by and through Lt. Mattiello admits that nothing other than Defendant Mills calling for assistance lets them know that Defendant Mills' feared for his safety and Defendant Mills admitted he made the call at the request of the Plaintiff. (Exhibit 5 Pg 72:13-21 and Exhibit 2 Pg 136:22-137:12).  Even according to Officer Mills' allegations of what occurred by the time he had called for backup, he had no reason to fear for his safety, as Plaintiff was simply standing on her porch and the only other individuals were located in the home and had not left the house.

Therefore when Officer Mills approached Plaintiff, grabbed Plaintiff by the arm, bent her over a railing and then forcibly placed her in handcuffs he was not in fear for his safety.

In fact Defendant's Preliminary Statement goes to show that the charge of eluding the police was an afterthought and was not the reason that Defendant Mills subjected the Plaintiff to the treatment she suffered on October 12, 2004.  Defendants simply state in their Preliminary Statement "Plaintiff was arrested for failure to provide a valid driver's license." and not for eluding the police. (*See.* Defendant District of Columbia and Eldorado Mills' Motion for Summary Judgment Pg 6 of 16 – Docket number 54).

C.    <u>Plaintiff was subjected to excessive force by and through the actions of Defendant Mills and the District of Columbia in violation of the 4<u>th</u> Amendment of the Constitution of the United States of America</u>

Defendants are correct that a police officer is privileged to use reasonable force in carrying out his official duties.  However, in this case, the use of force by Officer Mills against Plaintiff was unnecessary and excessive. (Exhibit 7).  There is testimony from Plaintiff, as identified in the Fact section above, that clearly describes the excessive force used by Officer Mills.  Plaintiff alleges that Officer Mills grabbed her arm, bent her over a railing and forcibly placed her in handcuffs, as she was attempting to comply with the request of another officer to show her driver's license.  Plaintiff also testified that Officer Mills put the handcuffs on extremely tight and she told him that they were too tight and that he did nothing to correct this.

As stated in, *Holder v. District of Columbia*, 700 A.2d 738, 741-742 (D.C. App. 1997), a police officer's use of force is an issue beyond the kin of the average jury and therefore Plaintiff's expert, Robert Klotz, will testify that use of force by Officer Mills against Plaintiff was unnecessary and excessive based on a local and national standard for police officers.

Since the use of force issue must be presented through expert testimony Plaintiff has presented Robert Klotz and the Defendants have not disputed the opinion of Plaintiff's expert.

Based on the foregoing, and because a reasonable jury could conclude that Defendant Mills used excessive and unnecessary force against Plaintiff, Defendant's request for Summary Judgment as to Plaintiff's claim for excessive force should be denied by this Honorable Court.

D.    <u>Plaintiff Can Prove Facts Through Her Expert That Officer Mills was Negligently Supervised by officials in the Metropolitan Police Department of the District of Columbia</u>

As the Defendant's have so aptly pointed out the Courts generally require expert testimony regarding the standard of care in cases concerning allegations of negligent police operations, supervision and training. *Griggs v. Washington Metropolitan Area Transit Authority, et al.*, 442 A.2d 159, 164-165 (D.C. App. 1982).

The decision in *Holden v. District of Columbia*, 700 A.2d 738, 741-742 (D.C. App. 1997) states that the use of force as in pertains to Police Officers is an issue beyond the kin of the average jury and therefore an expert witness is required to testify to the matter. While the Defendant's argue about what the Plaintiff's expert, Robert Klotz, will testify to and what is and what may not be contained within his report they have neglected to present any credible evidence to challenge Mr. Klotz's report in any manner regarding the standard of care as it pertains to police supervision.

The actions and/or inactions on the part of Officer Mills' supervisor, namely Sergeant McCourt, clearly shows that members, supervisors, and/or officials of the Metropolitan Police Department were not adequately supervising Defendant Mills as identified in the Fact section above.

Sergeant McCourt clearly testified that he does not even recall speaking with the Plaintiff at the scene of the incident and instead he merely took the words of Defendant Mills regarding the allegations against the Plaintiff despite the fact that Plaintiff's mother had called the police and said that an officer was harassing the Plaintiff and could they send someone to her home. Sergeant McCourt did not even feel the need to file a report on the incident and in fact it was not even Sergeant McCourt who signed off on Defendant Mills' report concerning the incident it was Lieutenant Robert Atcheson. (Exhibit 2 Pg 129:10-18).

It is interesting to note that even after the filing of the Complaint that began the above captioned claim and the facts and evidence in this case, the District of Columbia has not investigated nor disciplined Officer Mills. (Exhibit 2 15:4-6 and Exhibit 5 Pg 35:12-13).

The Defendant's attempt to get creative with the facts and assert that simply because Mr. Klotz may or may not have put forth any opinions regarding police supervision that this Court should automatically dismiss the Negligent Supervision claims.  Plaintiff has and will present evidence from which a reasonable jury can conclude that Defendant District of Columbia was negligent in supervising Defendant Mills.

E.    Defendant Mills and Defendant District of Columbia Intentionally Inflicted
      Emotional Distress Upon the Plaintiff on October 12, 2004.

Plaintiff has asserted a *prima facie case* regarding the many allegations contained within the Plaintiff's Complaint and as stated above, Plaintiff was obviously shocked, offended, scarred and in extreme fear due to the actions of Defendant Mills and the District of Columbia and to this day is "haunted" by the events that occurred on October 12, 2004.  (Exhibit 6, 17 & 18).

Even after Defendant Mills saw Plaintiff crying and in extreme fear he simply taunted Plaintiff by stating that "You're not so tough now" and drove Plaintiff around with the windows down in the vehicle in the middle of October and driving at an excessive rate of speed and

throwing the Plaintiff around the back seat.  Defendant Mills stopped the vehicle in an isolated

location that clearly made Plaintiff fear for her safety and her life.  Defendant Mills further told

someone during a cellular call that I'm going to teach this bitch a lesson".

At the time and date of the incident Officer Mills was a fourteen year veteran of the

police force and knew or should have known that when you threaten a woman and say that you

are "going teach this bitch a lesson" and drive her to a secluded location in the early morning

hours, while it is still dark out that she is going to suffer extreme emotional distress and

agitation.  Moreover, Plaintiff testified that she is still haunted by theses events.  (Exhibit 6, 17 &

18).

It was clear that Plaintiff's mother had called the police for help and stated that the police

were harassing the Plaintiff and Defendant Mills and Sergeant McCourt continued to treat the

Plaintiff like a criminal.  Plaintiff believed that her mother had in fact lodged a complaint against

Defendant Mills on her behalf.  (Exhibit 1 Pg 92: 1-5).

Furthermore, in this case, it is clear that a jury could conclude that the Defendant's actions

as detailed in the above sections is extreme and outrageous conduct and goes beyond all possible

bounds of decency.

Based on the arguments already presented, and the evidence in this case Defendants have

failed to establish, that on the intentional infliction of emotional distress claim, they are entitled to

judgment as a matter of law and their request to grant summary judgment should be denied.

F.     Plaintiff Was Assaulted and Battered by Defendant Mills and Other Members of
       the District of Columbia Metropolitan Police Department

Plaintiff was subjected to assault and battery when she was grabbed by the arm and

pulled to her front door.  Moreover, plaintiff was assaulted and battered when she was grabbed

and forcibly placed into handcuffs by defendant mills and other members of the District of Columbia Police department.

Defendant Mills did not have the authority to touch plaintiff in the manner complained of herein, in that he did not have probable cause to arrest plaintiff and the force that he used to effectuate the unlawful arrest was excessive. There is not evidence that plaintiff resisted arrested, or in any manner behaved in a manner that justified or authorized the touching by defendant Mills which occurred without plaintiff's express or implied consent.

The record herein is clear that plaintiff felt threatened by defendant Mills' actions and she was in fear of her safety and her life based on his actions taken towards her.

IV.    **CONCLUSION**

Based on the foregoing, plaintiff has established a *prima facie* case of negligence, false arrest, false imprisonment, assault, battery, excessive force, and intentional infliction of distress by and through the actions of the Defendants.

Plaintiff has presented evidence of disputed facts that are material to this case, and the Defendants have failed to establish that they are entitled to judgment as a matter of law.

Based upon the evidence in this case, a jury could find that the Defendants' were negligent and that Plaintiff was subjected to false arrest, false imprisonment, assault, battery, excessive force, and was intentionally subjected to emotional distress by and through the actions of the Defendants. The documentary evidence presented raises at least a question as to the credence to be given to the Defendant's bare assertions in response to Plaintiff's allegations. When all facts asserted in this case are viewed in a light most favorable to the Plaintiff, the Defendants Motion for Summary Judgment should be denied. At this juncture we should not be

trying to weigh the evidence and determine the truth of the matter but only determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**WHEREFORE**, based on the foregoing, Plaintiff Shante M. Moore, respectfully requests that this Honorable Court deny Defendants Motion for Summary Judgment and grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

By:     /s/ *Donna Williams Rucker*

Donna Williams Rucker, 446713
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHANTE M. MOORE,                     *
                                     *
         Plaintiff,                  *
                                     *
    v.                               *        Civil Action No.: 05-2020 (PLF/DMR)
                                     *
DISTRICT OF COLUMBIA, et. al.,       *
                                     *
         Defendants.                 *
_____

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE**

Plaintiff Shante M. Moore, by and through Donna Williams Rucker, Esquire, and the law

firm of DuBoff & Associates, Chartered, submits Material Facts in Dispute as follows:

1.      Plaintiff stopped at the stop sign at 46th Street and Hillside Road. (Exhibit 1 Pg

52:7-9).

2.      Plaintiff did not see Defendant Mills on Hillside until she had stopped at the stop

sign, completed a left turn, and was proceeding up Hillside as Defendant Mills was coming down

Hillside.  (Exhibit 1 Pg 52:7-16).

3.      At some point Plaintiff and Officer Mills passed each other, but they were not at

the intersection of 46th and Hillside at the same time. (Exhibit 1 Pg. 52:17-20).

4.      After Plaintiff completed her turn and was on Hillside Road she passed Defendant

Mills and as she passed him Defendant Mills made a sexual gesture towards the Plaintiff with his

tongue and hand. (Exhibit 1 Pg 52:19-56:2).

5.      Plaintiff ignored the officer's advances and continued approximately two blocks

to her home at 1108 48th Place S.E.   (Exhibit 1 Pg 56:3-5).

6.      Plaintiff continued and drove her car onto the driveway of her home and got out

of the car, as she did so she then observed a marked Metropolitan Police vehicle pull behind her, turn on its emergency lights and block the driveway. (Exhibit 1 Pg 56:6-9; 18-21 and Pg 57:9-58:20).

7.     The Plaintiff had not observed the police cruiser, since she passed it on Hillside Drive S.E. (Exhibit 1 Pg 56:6-9).

8.     Defendant Mills, was acting in the course of and within the scope of his duties as a police officer of the Metropolitan Police Department, (Exhibit 2 Pg 98:12-16).

9.     Defendant Mills got out of the police car and shouted "Bitch you wanna go to jail tonight!" and began to walk towards the Plaintiff. (Exhibit 1 Pg 62:14-16).

10.     Plaintiff was scarred by Defendant Mills, and she stopped and was looking at Defendant Mills. (Exhibit 1 Pg 101:19-102:6).

11.     Plaintiff, who was within steps of her home, and was scared, said she wanted to get her father who was in the house.  Defendant Mills then physically grabbed Plaintiff and shoved her away from the door while yelling, "I'll get your father!" (Exhibit 1 Pg 62:19-22 and 65: 15-21).

12.     Then Defendant Mills began to beat on the door with his fist. (Exhibit 1 62:19-22).

13.     Members of the Plaintiff's family, including her mother and father, had come to the door, but remained behind the screen door. (Exhibit 3 Pg 39:7).

14.     Plaintiff's family was not violent or yelling at Defendant Mills. (Exhibit 4. Pg 22:10-13).

15.     Plaintiff, who feared for her safety, and the safety of her family, asked Defendant Mills to call another officer because she didn't understand why he was treating her and her

family as he was.  (Exhibit 1 Pg 70:20-71:3 and Exhibit 5 Pg 72:13-17).

16.    Officer Mills' claims that he called for backup because he feared for his safety are not credible as he admits that Plaintiff asked him to call for backup.  (Exhibit 5 Pg 72:13-21).

17.    Plaintiff's family had also called the police and stated the police were harassing Ms. Moore.  (Exhibit 5 Pg 59:10-13 and Exhibit 2 Pg 145:2-4).

18.    Defendant Mills called for a Sergeant to come to the scene. (Exhibit 5 Pg 72:18-21).

19.    Defendant Mills was standing in front of the door of the home and was facing the house with Plaintiff to his left.  (Exhibit 5 Pg 51:10-14).

20.    Several other officers, including Sergeant McCourt responded to the scene. (Exhibit 4 Pg 16:15-18 and Exhibit 5 Pg 47:11-15).

21.    Sgt. McCourt was responsible for what went on one he arrived at the scene. (Exhibit 2 Pg 109:18-21).

22.    Sgt. McCourt had the ability to say that Defendant Mills' actions were improper. (Exhibit 5 Pg 65:12-15).

23.    Sgt. McCourt, Defendant Mills' supervisor, does not recall speaking with Plaintiff at the scene to ascertain what was going on or why her family had called the police, as was required.  (Exhibit 4 Pg 49:5-11 and Exhibit 2 Pg 146;20-147:7).

24.    The other officers who arrived on the scene asked Plaintiff for her license and Plaintiff responded that she had never been asked for it before and that it was in her purse. (Exhibit 3 Pg 32:1-4).

25.    Plaintiff reached into her purse and attempted to hand the license to the inquiring officer. (Exhibit 1 Pg 79:12-16).

26.     Officer Mills never asked Plaintiff for her license.  (Exhibit 3 Pg 31:18-22).

27.     As Plaintiff extended her arm with the driver's license in her hand, Defendant

Mills grabbed Plaintiff's arm, shoved it up behind her back and slammed her into the metal

railing and bent her over the railing on her porch, causing her to suffer pain and injury to her arm

and placed her in handcuffs. (Exhibit 5 Pg 72:9-12).

28.     Other officers grabbed the Plaintiff after Defendant Mills had slammed Plaintiff

into the railing. (Exhibit 1 Pg 79:12-80:3 and Exhibit 3 Pg 33:2-21 and Pg 34:13-15).

29.     Defendant Mills then placed Plaintiff in the back of his police car, where she

remained for quite awhile.  (Exhibit 1 Pg 81:15-17).

30.     Defendant Mills returned to the car and drove Plaintiff away from her house,

ostensibly taking her to the police station. (Exhibit 1 Pg 82:17-20).

31.     Defendant Mills did not drive directly to the police station. (Exhibit 1 Pg 83:20-

22).

32.     As Defendant Mills was driving, he pulled over on Hillside and made a cell phone

call telling an unknown person,  "I'm going to teach this bitch a lesson!"  (Exhibit 1 Pg 83:6-8).

33.     Plaintiff started to cry again and Defendant Mills said to Plaintiff "You're not so

though now". (Exhibit 1 Pg 83:9-10).

34.     Defendant Mills drove Plaintiff with his windows down, and the weather was

very cold. (Exhibit 1 83:13-14).

35.     Defendant Mills was driving erratically and speeding causing the Plaintiff, whose

hands were cuffed behind her back, to slide back and forth along the back seat. (Exhibit 1 Pg

83:15-16).

36.     Plaintiff was not able to identify what streets they were driving on because

4

Defendant Mills was driving at a high rate of speed.  (Exhibit 1 Pg 83:20-22).

37.    Plaintiff was aware that Defendant Mills was not taking her directly to the police station. (Exhibit 1 Pg 83:20-22).

38.    Defendant Mills then drove the police car to a secluded wooded area. (Exhibit 1 Pg 83-17-19).

39.    The Plaintiff was now terrified. (Exhibit 6, 17 & 18).

40.    Plaintiff knew she was not at the police station, and was extremely afraid of Defendant Mills and feared what he might do to her.  (Exhibit 6, 17 & 18).

41.    Plaintiff was still crying and was thoroughly intimidated and terrified by Defendant Mills actions and she was in fear for her life.  (Exhibit 6, 17 & 18).

42.    Plaintiff's brother Johnny Andrew Moore drove to the station to meet Plaintiff and Defendant Mills.  Mr. Moore left the house after the Plaintiff and Defendant Mills and drove for less than 5 minutes to get to the 6th District Station and when he arrived he was informed that his sister, the Plaintiff, had not yet arrived at the station. (Exhibit 3 Pg. 46:8-14).

43.    Defendant Mills eventually arrived at the police station where Plaintiff was processed and was shocked to learn that she was being charged with fleeing from the police. (Exhibit 1 Pg 105:5-9).

44.    Plaintiff said Defendant Mills had never said anything about her attempting to flee from him and that she had only learned he claimed she had not stopped at a stop sign blocks from her home. (Exhibit 1 Pg 104:4-10 and Pg 63:9-11).

45.    Plaintiff was booked, processed and placed in a jail cell where she was forced to spend the night.  (Exhibit 1 Pg 95:11-14).

46.    The next morning, Plaintiff was transported to the D.C. Superior Court with the

other prisoners. (Exhibit 1 Pg 96:10-97:3).

47.    Plaintiff formerly worked at the D.C. Superior Court and was thoroughly embarrassed and humiliated when courthouse staff with whom she had previously worked recognized her.  (Exhibit 1 Pg 10:2-14 and Pg 98:17-99:3 and Pg 99:19-100:5).

48.    There were court appearances scheduled that Plaintiff attended; Defendant Mills never appeared at any scheduled hearing and the case against Plaintiff was dismissed. (Exhibit 2 Pg 134:2-4).

49.    Defendant Mills used excessive force when placing Plaintiff in handcuffs. (Exhibit 1 Pg 79:12-80:3 and Exhibit 3 Pg 33:2-21 and Pg 34:13-15 and Exhibit 5 Pg 72:9-12).

50.    Defendant Mills was driving in the opposite direction of the Plaintiff and had passed her vehicle when Plaintiff allegedly ran the stop sign. (Exhibit 1 Pg 52 15-18).

51.    Defendant Mills arrested the Plaintiff without probable cause.  (Exhibit 7).

52.    Plaintiff was attempting to comply with the other officers on the scene and provide her license when she was grabbed and placed in handcuffs.  (Exhibit 3 Pg 32:1-4 and Exhibit 1 Pg 79:12-16 and Exhibit 5 Pg 72:9-12).

53.    When being confronted by Defendant Mills, Plaintiff was afraid and she therefore attempted to get her father from the residence. (Exhibit 1 Pg 62:19-22).

54.    Plaintiff is haunted by the events that occurred on October 12, 2004. (Exhibit 6, 17 & 18).

55.    Plaintiff thought that she was going to be killed by Defendant Mills.  (Exhibit 6, 17 & 18).

56.    Plaintiff was embarrassed and humiliated by the events that occurred on October 12, 2004.  (Exhibit 6, 17 & 18).

57.     Plaintiff did not resist arrest. (Exhibit 1 Pg 80:4-6).

58.     Plaintiff did not try and evade the police. (Exhibit 1 Pg 56:6-9).

59.     Defendant Mills' actions on October 12, 2004 caused the Plaintiff emotional distress and physical harm. (Exhibit 6).

60.     Plaintiff and Defendant were never at the intersection of 46th Street and Hillside Road at the same time, it was not until after Plaintiff completed her turn and was westbound on Hillside Drive S.E., before she was able to see the marked police cruiser. (Exhibit 1 Pg 52:10-16).

61.     Event Chronology's show that the request for a supervisor from the home of the Plaintiff occurred prior to Defendant Mills reporting that the Plaintiff ran from the police. (Exhibits 8 and 9).

62.     Plaintiff suffered physical injury to her arm due to the actions of Defendant Mills in grabbing her arm with excessive force. (Exhibit 6, 17 & 18).

63.     Sergeant McCourt had a duty to contact the watch commander if he believed that Plaintiff's arrest was against the law or in violation of policy and procedure. (Exhibit 2 111:10-19).

64.     Defendant Mills grabbed Plaintiff and then he banged on the door of the house. (Exhibit 1 65:17-21).

65.     Plaintiff's expert Mr. Robert Klotz has opined that Defendant Mills, utilized inappropriate and unnecessary force in taking her into custody and that Defendant Mills acted inappropriately by taking Plaintiff to a secluded area rather than directly to the police facility for processing. (Exhibit 7).

66.     Officer Mills is not entitled to qualified immunity because his actions were not

objectively reasonable and he violated Plaintiff's clearly established constitutional rights. (Exhibit 7).

67.    Sergeant McCourt did not file a report on the incident and Sergeant McCourt did not sign off on Defendant Mills' report concerning the incident instead it was Lieutenant Robert Atcheson. (Exhibit 2 Pg 129:10-18).

68.    After the filing of the Complaint that began the instant action, the District of Columbia has not investigated nor disciplined Officer Mills. (Exhibit 2 15:4-6 and Exhibit 5 Pg 35:12-13).

69.    Even after Defendant Mills saw Plaintiff crying and in extreme fear he simply taunted Plaintiff by stating that "You're not so tough now" and drove Plaintiff around with the windows down in the vehicle in the middle of October and driving at an excessive rate of speed and throwing the Plaintiff around the back seat.  (Exhibit 1 Pg 83:9-10, 13-16, and 20-22).

70.    Defendant Mills stopped the vehicle in an isolated location that clearly made Plaintiff fear for her safety and her life.  (Exhibit 6, 17 & 18).

71.    Plaintiff believed that her mother had in fact lodged a complaint against Defendant Mills on her behalf.  (Exhibit 1 Pg 92:1-5).

Respectfully submitted,

By:    /s/ *Donna Williams Rucker*
Donna Williams Rucker, 446713
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile