**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHANTE M. MOORE,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| v. | *   Civil Action No.: 05-2020 (PLF/DMR) |
| | * |
| **DISTRICT OF COLUMBIA, et. al.,** | * |
| | * |
| **Defendants.** | * |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING OFFICER MILLS' POLICE ENCOUNTERS AND DISCIPLINARY EVENTS SUBSEQUENT TO ARREST OF PLAINTIFF**

**COMES NOW**, Plaintiff Shante M. Moore, by and through her counsel Donna Williams Rucker, Esquire, and the law firm of DUBOFF & ASSOCIATES, CHARTERED, and pursuant to Federal Rules of Civil Procedure, in Opposition to Defendant District of Columbia's Motion In Limine to Exclude Evidence Regarding Officer Mills' Disciplinary Events Subsequent to Arrest of Plaintiff, and in support therefore, states as follows:

1. The activities of Eldorado Mills, which lead to his arrest in December of 2004, occurred prior to the arrest of the Plaintiff and therefore Defendant District of Columbia knew or should have known of that Defendant Mills' required close supervision as a police officer.

2. As permitted under Fed.R.Evid 404(b) Plaintiff intends to introduce evidence of Defendant Mills' arrest in December of 2004 to show motive, opportunity, intent, or absence of mistake or accident.

3. Plaintiff incorporates the facts law and argument contained within the Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant

1

District of Columbia's Motion in Limine to Exclude Evidence Regarding Officer Mills' Disciplinary Events Subsequent to Arrest of Plaintiff as if fully set forth herein.

**WHEREFORE**, plaintiff respectfully requests that Defendant District of Columbia's Motion In Limine to Exclude Evidence Regarding Officer Mills' Disciplinary Events Subsequent to Arrest of Plaintiff be denied and for such other and further relief as this Honorable Court deems just and proper.

                                          Respectfully submitted,

By:   /s/ *Donna Williams Rucker*
        Donna Williams Rucker, 446713
        DUBOFF & ASSOCIATES, CHARTERED
        8401 Colesville Road, Suite 501
        Silver Spring, Maryland 20910
        (301) 495-3131    Office
        (301) 587-1872    Facsimile

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing <u>Plaintiff's Opposition to Defendant District of Columbia's Motion In Limine to Exclude Evidence Regarding Officer Mills' Disciplinary Events Subsequent to Arrest of Plaintiff</u>, with accompanying <u>Memorandum of Points and Authorities</u> and a copy of the proposed <u>Order</u> were electronically mailed via this Court's Electronic Case Filing System this 11th day of December, 2007, to C. Vaughn Adams, Esquire, Assistant Attorney General, 441 4th Street, N.W., Washington, D.C.

                                      /s/ *Donna Williams Rucker*
                                      Donna Williams Rucker, 446713

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHANTE M. MOORE,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| v. | *   Civil Action No.: 05-2020 (PLF/DMR) |
| | * |
| **DISTRICT OF COLUMBIA, et. al.,** | * |
| | * |
| **Defendants.** | * |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING OFFICER MILLS' POLICE ENCOUNTERS AND DISCIPLINARY EVENTS SUBSEQUENT TO ARREST OF PLAINTIFF**

**COMES NOW**, Plaintiff Shante M. Moore, by and through her counsel Donna Williams Rucker, Esquire, and the law firm of DUBOFF & ASSOCIATES, CHARTERED, and pursuant to Federal Rules of Civil Procedure, and files this Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant District of Columbia's Motion In Limine to Exclude Evidence Regarding Officer Mills' Disciplinary Events Subsequent to Arrest of Plaintiff, and in support therefore, states as follows:

**I.    FACTS**

The underlying facts of the above captioned case are that on or about October 12th, 2004 the plaintiff was operating her motor vehicle northbound on 46th Street S.E., at, or near, its intersection with Hillside Road S.E.  Plaintiff stopped at the stop sign at the corner and she then made a left turn onto Hillside Drive S.E..  After completing her turn, she passed a marked patrol car as she went westbound on Hillside Drive S.E.. As she passed the marked car the operator of the vehicle, later identified as defendant Mills, made sexual gestures using his hand, towards the plaintiff.  Plaintiff frowned at the officer's advances and continued approximately two blocks to

3

her home at 1108 48th Place S.E..  Plaintiff drove her car onto the driveway of her home and got out of the car, as she did so she observed a marked Metropolitan Police vehicle with its emergency lights on and the vehicle blocked the driveway. The plaintiff had not observed the marked car since passing it on Hillside Drive S.E..

Defendant Mills got out of the police car and shouted "Bitch you're going to jail tonight!", and began to walk towards her.  The plaintiff asked defendant Mills what she had done wrong and he replied that she had failed to stop for the stop sign at 46th and Hillside Road S.E.. Plaintiff then told the defendant Mills that she had stopped, and if she hadn't, why hadn't he stopped her when he passed her. Defendant Mills continued to advance on the plaintiff placing her in fear.  Plaintiff said she wanted to get her father who was in the house. She then opened the screen door to her home with her keys in hand.  The defendant Mills then physically put his hands on the plaintiff and shoved her away from the door. He then slammed her against the door and told her "I'll get your father!". The defendant Mills then began to beat on the door with his fist.  Plaintiff's younger brother opened the front door and defendant Mills told the brother that "Somebody better tell her to give me her license.". Plaintiff responded that he had never asked for her driver's license until that moment, and that she had it right in her purse and she would give it to him.  Members of the plaintiff's family, including her mother and father, had come to the door, but remained behind the screen door. They tried to find out what was going on, but the defendant Mills continued to yell in a loud voice.     At this point the plaintiff began to fear for her own safety, and the safety of her family, and asked the defendant Mills to call another officer because she can't understand why he was treating her and her family that way.  Defendant Mills then spoke into his radio and said something about sending back-up.  At least six other officers and a sergeant responded to the scene in at least five police cars. One of the responding officers

asked who was in charge while another asked the plaintiff if she had ever shown her driver's license to defendant Mills.  The plaintiff responded that she had never been asked for it and that it was in her purse. She then reached into her purse and attempted to hand the license to the inquiring officer.  As she extended her arm with the driver's license in her hand, the defendant Mills grabbed the arm, shoved it up behind her back and slammed her into the metal railing on her porch, causing her to suffer pain and injury to her arm. Other officers grabbed the plaintiff after the defendant Mills has slammed her into the railing.  The plaintiff is cuffed and placed in the back of a police car.

Defendant Mills later gets in the car and drives the plaintiff away from her house, ostensibly taking her to the police station. Defendant Mills did not drive directly to the police station. During part of the drive he was talking to an unknown person on his cell phone, telling them "I got this bitch in the car, she fu--ed with the wrong person!"  Although the weather is cold, defendant Mills is driving around with his windows down, speeding up and down streets that do not lead to the police station, he's driving so fast that plaintiff is not able to see the street signs and cannot figure out where defendant Mills is taking her.  Defendant Mills then drove the police car to a secluded wooded area. The plaintiff was now terrified. She knew she was not at the police station, and that she was at the mercy of defendant Mills, she began to cry.  Defendant Mills then taunted her by saying "You're not so tough now" and other things. The plaintiff was thoroughly intimidated and terrified by defendant Mills actions. She was in fear of her life. Defendant Mills kept the plaintiff in the wooded area for an unknown period, plaintiff was too terrified to know how much time elapsed.  At some point, defendant Mills pulled out of the wooded area and drove plaintiff to the police station.

5

The plaintiff was arraigned and released on her own recognizance. There were several court appearances scheduled that she attended, the defendant Mills never appeared and the case against her was dismissed. After her arrest, and after the dismissal of her case, on several occasions, plaintiff observed the defendant Mills in his police car parked across from, or near her house. He would sit and stare at plaintiff and this frightened and intimidated plaintiff. Defendant Mills carried out his actions against plaintiff with malice and his conduct was intentional and egregious and caused plaintiff severe emotional distress, embarrassment and humiliation.

Defendant Mills was arrested in December of 2004 in Prince George's County, Maryland on charges of pandering based on allegations that he was and had been operating a prostitution ring out of a hotel located in Prince George's County.

**II.    ARGUMENT**

**A. The activities of Eldorado Mills, which lead to his arrest in December of 2004, occurred prior to the arrest of the Plaintiff and therefore Defendant District of Columbia knew or should have known that Defendant Mills' required close supervision as a police officer.**

Evidence of Defendant Mills arrest subsequent to his arresting Plaintiff is notice of the District because the District should have been on notice of Mills' conduct based on the prior acts and complaints against him. The District should have taken action to better supervise Defendant Mills. Mills' subsequent arrest is indicative of how out of control Mills' was and it shows a patter of behavior leading up to his arrest that warrants close supervision. (Plaintiff's Exhibit 1 Memorandum from Internal Affairs Division regarding Citizen Complaints against Officer Mills)

In this case the District did not properly supervise Mills on the scene of Plaintiff's incident. Supervision was absent in the face of many complaints and/or infractions and the

6

District had a duty to supervise Mills, and it failed to properly do so. The other instances of acts or wrongs go from bad to worse culminating with Mills' arrest in December 2004. The fact that Defendant District of Columbia failed to properly supervise as to Plaintiff's incident was a green light for other behavior including Mills' subsequent arrest just two months later.

The activities of Defendant Mills in operating a prostitution ring out of a Prince George's County hotel were activities that Plaintiff believes had been ongoing and were in existence prior to her arrest in October of 2004. It should be noted that the Internal Affairs division of the Metropolitan Police Department ["MPD"] concluded that Officer Mills was in fact guilty by a preponderance of the evidence but unable to take action as more than 90 days had passed and the MPD is required by the Union to initiate any action within 90 days.

If Plaintiff's allegations regarding Defendant Mills' actions are proven then the District of Columbia knew or should have known that one of its officers was conducting himself in a manner not befitting a uniformed officer of the Metropolitan Police Department and was engaging in activities that were degrading to women.

Defendant Mills relies on the case of *Smith v. Executive Club, Ltd.*, 458 A.2d 32 (D.C. 1983) in an attempt to show that a subsequent arrest of the officer in question is irrelevant to any claim of negligent supervision or Respondeat superior liability. In *Smith* after the alleged false arrest incident the individual was arrested seven months later on domestic violence charges. These two incidents show no common nexus or imputed knowledge to the individual's employer to the extent that they knew or should have known of the individual's propensity for this type of behavior. Whereas in the case as bar Defendant Mills' conduct leading to his arrest a mere two months after Plaintiff's arrest share a common nexus in that both incidents show that Defendant

7

Mills' conduct toward females in general rises to the level of unethical, unscrupulous, and wrong.

Defendant District of Columbia had knowledge of Defendant Mills' conduct and behavior and need for supervision prior to his arrest in December of 2004, however, when taken cumulatively Defendant Mills' actions before Plaintiff's arrest and those actions subsequent to her arrest rise to the level of actual knowledge to the District of Columbia regarding Defendant Mills' need for supervision.

Defendant Mills relies on the case of *Williams v. Drake*, 146 F.3d 44 (1st Cir., 1998) in which a Magistrate Judge correctly excluded evidence of prisoner's guilty plea before prison disciplinary board. In that case the guilty plea was from an inmate before an administrative hearing while in the case at bar Defendant Mills was arrested, charged and tried in the Courts in Prince George's County. The Court in *Williams* did not preclude testimony concerning the disciplinary proceeding in gross, but stated repeatedly that the defense could ask Williams about the nature of the hearing and about any statements that he made before the Board.

With a sufficient limiting instruction to the jury any mention of Defendant Mills' arrest would not be "highly prejudicial" or "confusing to a jury" and in fact Defendant Mills' as a party opponent is expected to be present at the trial and is able to testify on his own behalf that he was, in fact, acquitted of the charges.

### B. Fed.R.Evid 403, and 404(b), permits Plaintiff to introduce evidence of Defendant Mills' arrest in December of 2004.

In the case of *Carter v. District of Columbia*, 795 F.2d 116 (C.A. D.C. 1986) the court has stated that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the

8

character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See also Fed.R.Evid. 404(b).

Rule 404(b) allows specific instances of conduct to be used to prove such matters a motive, opportunity, intent, or absence of mistake or accident. It should be noted, however, that this list is not exclusive and instances of conduct may be admissible for any other non-propensity purpose that is relevant to a law suit. The use of other acts which bear a similarity to the charged act may be offered to show the intent of a person or to show a particular modus operandi, such as the case at bar.

Federal Rule of Evidence 403 provides: "Although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Advisory Committee Notes instruct that "[I]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness of a limiting instruction." Fed.R.Evid. 403 Notes of Advisory Committee on Proposed Rules.

### III. CONCLUSION

Defendant Mills will not be prejudiced in any way by the admission of his arrest in December of 2004. A proper limiting instruction to the jury will remove any such prejudice or bias that the jury might impose when rendering its verdict in the above captioned case.

Plaintiff is not using the December 2004 arrest solely to show that the District of Columbia knew or should have known of Defendant Mills' actions and need for supervision.

Plaintiff intends to introduce this evidence to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, accident and/or habit on the part of Officer Mills.

     WHEREFORE, plaintiff respectfully requests that Defendant District of Columbia's Motion In Limine to Exclude Evidence Regarding Officer Mills' Disciplinary Events Subsequent to Arrest of Plaintiff be denied and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

By:   /s/ *Donna Williams Rucker*
Donna Williams Rucker, 446713
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile